UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN BALKOWITSCH and NANCY BALKOWITSCH, TRUSTEES OF THE JOHN R. BALKOWITSCH, III AND NANCY BOYESEN BALKOWITSCH 2004 REVOCABLE INTER VIVOS TRUST; MADHU SHARMA; SEEMA SHARMA; and J. DOUGLAS MEADOR and LUANN MEADOR, TRUSTEES OF THE MEADOR TRUST DATED OCTOBER 8, 1999,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>D&M DEVELOPMENT, INC.; JAMES DUSA; RYAN DUSA; NICHOLAS MICHELI; NORCAL GOLD, INC., dba RE/MAX GOLD; and DOES 1 to 100, inclusive,<br><br>　　　　　Defendants. | No.　2:15-cv-00196 JAM EFB<br><br>**ORDER DENYING DEFENDANT MICHELI'S MOTION TO DISMISS** |

　　Defendant Nicholas Micheli ("Defendant Micheli") moves to dismiss (Doc. #11) the second cause of action alleged in Plaintiffs John and Nancy Balkowitsch, Madhu and Seema Sharma, and Douglas and Luann Meador's ("Plaintiffs") complaint (Doc. #1).  Plaintiffs oppose the motion (Doc. #16) and Defendant Micheli filed a reply (Doc. #17).  For the following reasons, the

1

motion is denied.[1]

I.  FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

In December 2003, Defendant Micheli and Defendant Ryan Dusa formed a corporation, Defendant D&M Development, Inc. ("D&M"). Compl. ¶ 16.  Plaintiffs specifically allege that Defendant Micheli "serves as the President of D&M." Compl. ¶ 16. Plaintiffs allege that they were each approached, separately, by Defendant Ryan Dusa and his brother, Defendant Jim Dusa, about "investing in West Horizon II Office Park located in Yuba City, California." Compl. ¶¶ 18-19.  Defendants Ryan and Jim Dusa allegedly made the following two misrepresentations in soliciting Plaintiffs' investment: (1) they told Plaintiffs that they had "already identified tenants and purchasers of office space in the new project," due to an adjacent building being at capacity; in fact, the adjacent property was "only 50% full at the time of these representations;" and (2) they told Plaintiffs that they themselves "had personally invested their own monies in West Horizon II;" in fact, they "did not make the capital investments in the project they represented they had made." Compl. ¶¶ 19, 20, 29.  The development plan presented by Defendants Ryan and Jim Dusa called for D&M to develop the property and obtain the construction financing and development loan. Compl. ¶ 22. Relying on these representations, Plaintiffs each invested in the property.  On August 7, 2009, "a Tenancy in Common Agreement

---

[1] This motion was determined to be suitable for decision without oral argument.  E.D. Cal. L.R. 230(g).  The hearing was scheduled for May 6, 2015.

2

. . . was entered into between D&M, Jim [Dusa], Rhonda Dusa, and Plaintiffs." Compl. ¶ 23. Ultimately, the property was lost to foreclosure, and Plaintiffs lost their money. Compl. ¶ 34.

On January 23, 2015, Plaintiffs filed the Complaint, which includes the following causes of action: (1) violation of Section 10(b) of the Securities Exchange Act; (2) violation of California Corporations Code § 25400, et seq.; (3) intentional misrepresentation; (4) negligent misrepresentation; (5) breach of contract; (6) breach of fiduciary duty against Defendants Jim Dusa, Ryan Dusa, and RE/MAX; and (7) breach of fiduciary duty against Defendants Jim Dusa, D&M, and Micheli. On March 23, 2015, the parties reached a stipulation to dismiss (Doc. #12) without prejudice the first, fifth, and seventh causes of action against Defendant Micheli.

## II.   OPINION

Defendant Micheli argues that Plaintiffs' second cause of action – for a violation of the California Corporations Code ("CCC") § 25400 et seq. – is insufficiently pled against him individually. Mot. at 4. Specifically, Defendant Micheli argues that Plaintiffs fail to specifically "allege and show control and/or material assistance regarding the specifics of the alleged violation" by Defendant Micheli. Mot. at 6. Plaintiffs respond that, under the plain language of CCC § 25504, Defendant Micheli may be held liable based solely on his status as President of Defendant D&M. Opp. at 5. Thus, Plaintiffs argue, Plaintiffs' allegation that Defendant Micheli was the President of Defendant D&M, alone, is sufficient to support their second cause of action

3

1  against the moving Defendant.

2     In its entirety, CCC § 25504 provides as follows:

3     Every person who directly or indirectly controls a
      person liable under Section 25501 or 25503, every
4     partner in a firm so liable, every principal executive
      officer or director of a corporation so liable, every
5     person occupying a similar status or performing similar
      functions, every employee of a person so liable who
6     materially aids in the act or transaction constituting
      the violation, and every broker-dealer or agent who
7     materially aids in the act or transaction constituting
      the violation, are also liable jointly and severally
8     with and to the same extent as such person, unless the
      other person who is so liable had no knowledge of or
9     reasonable grounds to believe in the existence of the
      facts by reason of which the liability is alleged to
10    exist.

11     Cal. Corp. Code § 25504.

12 As relevant to Defendant Micheli's motion, CCC § 25504 states

13 that "every principal executive officer or director of a

14 corporation" liable under CCC § 25501 or CCC § 25503 "is also

15 liable jointly and severally" with that corporation.  (CCC

16 § 25504 also provides an affirmative defense to a director who

17 lacked knowledge of the underlying facts of the violation, but

18 this affirmative defense is not relevant on Defendant Micheli's

19 motion to dismiss.)  As one California court has held, "the plain

20 language of section 25504 expressly subjects outside directors to

21 collateral liability based solely on their status as directors,

22 without requiring proof of control[.]"  Hellum v. Breyer, 194

23 Cal.App 4th 1300, 1314 (2011).  Although liability for an

24 "employee of a person so liable" or a "broker-dealer or agent" is

25 contingent upon a showing that the individual "materially aid[ed]

26 in the act or transaction or transaction constituting the

27 violation," this limitation does not apply to the other

28 categories enumerated in CCC § 25504, including directors.  See

4

Hellum, 194 Cal.App.4th at 1311 (noting that "qualifying words, phrases and clauses are to be applied to the words or phrases immediately preceding and are not to be construed as extending to or including others more remote").

Importantly, there is no challenge to the sufficiency of Plaintiffs' pleading with regard to Defendant D&M. Plaintiffs have adequately alleged Defendant D&M's corporate liability under CCC § 25501, and have also specifically alleged that Defendant Micheli was the "President of D&M." Compl. 16. Given the broad language of CCC § 25504 ("every principal executive officer or director of a corporation so liable"), Plaintiff's allegations are sufficient to state a claim against Defendant Micheli. Contrary to Defendant's position, Plaintiffs were not required to specifically allege facts showing that Defendant Micheli materially aided in the fraud. The cases relied upon by Defendant Micheli are inapplicable, as they do not concern the secondary liability of principal executive officers or directors under CCC § 25504. See Mot. at 5 (citing Apollo Capital Fund, LLC v. Roth Capital Partners, LLC, 158 Cal.App.4th 226, 257 (2007), which concerns the secondary liability of a broker-dealer under CCC § 25504).

Defendant Micheli's attempt to criticize the reasoning in Hellum is unpersuasive. See Reply at 2 (characterizing the analysis in Hellum as "a very stringent and technically grammatical interpretation of section 25504"). Hellum accurately describes and correctly applies the plain, unambiguous language of CCC § 25504. Defendant also argues that, "[i]n overly hitching itself to 'the rules of grammar' or other constrictive

and rigid readings of statutory expression opined in one case, other courts can inadvertently be lead [sic] down the road of imprudence, if not the chasm of inequity." Reply at 4. Poetics aside, this argument mistakes the role of the Court in applying the plain language of a statute. As noted in Hellum:

> Such an approach subordinates the statutory text to an individual judge's subjective interpretation of what is, and what is not, compelling public policy and is particularly inappropriate in a case such as this where the statute's text is plain and unambiguous. (Murphy v. Kenneth Cole Productions, Inc. (2007) 40 Cal.4th 1094, 1103 ["'If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs.'"].) Judicial deference to the policy choices enacted into law by the Legislature requires that statutory interpretation focus primarily on the language of the statute.

Hellum, 194 Cal.App.4th at 1314.

For precisely this reason, Defendant Micheli's policy arguments are unavailing here.

Similarly unavailing is Defendant Micheli's argument that Hellum's rationale does not apply to this case because Defendant D&M was not the "primary violator." Reply at 3. Implied in this argument appears to be Defendant Micheli's position that, in this case, the "primary violator" was not Defendant D&M, but Defendants Jim and Ryan Dusa: that is, the corporation itself had less responsibility for the fraud than the individuals. While the Hellum court does describe the corporation as the "primary violator," the meaning of this phrase is clear from the structure of CCC § 25400, et seq. As noted in Defendant Micheli's own moving papers, "[t]he liability created by section 25501 is sometimes referred to as primary or direct because it applies to a

person who is directly or primarily responsible for violating section 25401 as a consequence of selling or buying securities by means of misrepresentations or omissions of material fact." Mot. at 4 (citing Moss v. Kroner, 197 Cal.App.4th 860, 873 (2011)). Conversely, CCC § 25504 provides for "secondary liability" of corporate directors (among others). Openwave Sys. Inc. v. Fuld, 2009 WL 1622164, at *6 (N.D. Cal. June 6, 2009). Thus, a "primary violator" is not a defendant who bears main responsibility for the violation, but rather, a defendant whose conduct violates CCC § 25401. As noted above, the sufficiency of Plaintiffs' pleading with regard to Defendant D&M is not challenged. Accordingly, Defendant D&M is as much a "primary violator" as was the corporation in Hellum.

### III.   ORDER

For the reasons set forth above, the Court DENIES Defendant Micheli's motion to dismiss:

IT IS SO ORDERED.

Dated: May 27, 2015

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE

7